UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA DESANDRE and
ROBERT DESANDRE,

      Plaintiffs,

v.

COUNTY OF OSCODA,
GARY COLE,
KEVIN GRACE,
KRISTI MCGREGOR, and
CASANDRA L. MORSE-BILLS,

      Defendants.

Case No. 20-12209
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

---

## OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [22]

---

It is not uncommon for neighbors to dispute a shared property line, and that is just what happened here. Tina and Robert DeSandre and Brenda Oats were next-door neighbors, and the DeSandres believed that Oats' shed was on their side of the property line. The DeSandres repeatedly told Oats that the shed was in poor condition and needed to be taken down. Eventually, Oats removed her belongings from the shed. But when the DeSandres began taking the shed down, Oats called the Oscoda County Sheriff's Office. The sheriff and a deputy responded. The DeSandres told the officers that the shed was on their property and that they had the right to take it down. This, apparently, led the sheriffs to take the matter to the Oscoda County Prosecutor. According to the DeSandres, the prosecutor then investigated the dispute

or advised the sheriff and deputy on whether there was probable cause to arrest the DeSandres. The trio sought and obtained a warrant, and the DeSandres were arrested and charged. The charges were eventually dismissed when a judge found no probable cause.

The DeSandres then filed this lawsuit against the sheriff, deputy, and the prosecutor; they have also sued the person who took over as the county prosecutor while the charges against them were still pending. The DeSandres claim, among other things, that the four defendants violated their First and Fourth Amendment rights.

Defendants have filed a motion arguing that they are entitled to judgment on the pleadings on some of the DeSandres' claims. (ECF No. 22.) As explained below, the Court agrees with Defendants that the DeSandres' conspiracy claim and their claims against the successor prosecutor must be dismissed. But when the complaint is read in the light most favorable to the DeSandres, the claims should not be dismissed against the prosecutor who allegedly investigated or advised the sheriffs on probable cause.

## I.

## A.

Because Defendants seek to dismiss the DeSandres' claims under Federal Rule of Civil Procedure 12(c), the following narrative assumes that the non-conclusory allegations of the DeSandres' complaint are true. *See Heinrich v. Waiting Angels Adoption Srvs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).

The DeSandres and Oats were next-door neighbors in Oscoda County, Michigan and disputed whether Oats' shed should be allowed to stay or had to go. The DeSandres believed that Oats' shed was on their side of the property line. And more than one property survey showed that they were right. (ECF No. 3, PageID.28.) The DeSandres "kept telling Oats that the shed had to be taken down as it was an eye sore and in a falling condition." (*Id.*)

On August 31, 2018, things escalated. That day, Oats removed her belongings from the shed after repeated requests from the DeSandres. (ECF No. 3, PageID.28.) But when the DeSandres began to tear the shed down, Oats called the Oscoda County Sheriff's Office. (*Id.*) She claimed that the DeSandres were trespassing and tearing down a shed that was on her property. (*Id.*)

Kevin Grace, the Oscoda County Sheriff, and Gary Cole, an Oscoda County Deputy, responded to the scene. (ECF No. 3, PageID.28.) The two officers threatened to arrest the DeSandres if they did not stop taking down the shed. (*Id.*) The DeSandres responded that they were within their rights to tear the shed down because it was on their property. (*Id.*) Grace and Cole then told the DeSandres that they would take the matter to the prosecuting attorney to issue criminal charges against them. (*Id.*)

According to the DeSandres, "[Cassandra] Morse-Bills and [Kristi] McGregor engaged in investigating the matter and/or gave legal advice on the fact that Grace and Cole had probable cause for arrest." (ECF No. 3, PageID.29.) This is imprecise pleading; it appears that at the time Grace and Cole talked with the Oscoda County

Prosecutor, it was Morse-Bills who held the position; it was months later, when Morse-Bills became a judge, that McGregor took over as the Oscoda County Prosecutor. *See* Prosecuting Attorney, Oscoda County, https://perma.cc/X6RG-NW9Z. The DeSandres further allege, "McGregor represented Oats in a civil PPO hearing against . . . Tina DeSandre in which [McGregor] admitted that the dispute between the neighbors was a civil dispute," but when acting as a prosecutor, "proceeded with criminal prosecution against the [DeSandres]." (ECF No. 3, PageID.29.)

In September 2018, Cole, Grace, and Morse-Bills sought and obtained a warrant for the DeSandres' arrest. (ECF No. 3, PageID.29.) The DeSandres were arrested on October 3, 2018. (*Id.* at PageID.30.)

Many months later, on July 23, 2019, the charges were dismissed by a circuit court judge for lack of probable cause. (ECF No. 3, PageID.30.) By this time, McGregor had taken over for Morse-Bills as Oscoda County Prosecutor.

**B.**

In August 2020, the DeSandres filed this lawsuit under 42 U.S.C. § 1983. They claim that Cole and Grace (the sheriffs) and Morse-Bills and McGregor (the prosecutors) and Oscoda County itself violated their First and Fourth Amendment rights. (ECF No. 3, PageID.30–33.) The DeSandres also claim that Defendants conspired to unlawfully arrest them and refused to drop the criminal charges even though Defendants knew there was no probable cause. (*Id.* at Page ID.33–34.)

Defendants now ask the Court to grant them judgment on some of the DeSandres' claims under Federal Rule of Civil Procedure 12(c). (ECF No. 22.) Morse-

4

Bills and McGregor argue that they are entitled to absolute immunity and that the DeSandres have not adequately pled that they violated the law. (*Id.* at PageID.122.) And all four defendants argue that the DeSandres' civil conspiracy claim is barred by the intracorporate-conspiracy doctrine. (*Id.*)

## II.

Federal Rule of Civil Procedure 12(c) provides that, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In deciding Rule 12(c) motions, courts use the standard governing Rule 12(b)(6) motions. *See Heinrich v. Waiting Angels Adoption Srvs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). As such, "this Court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.

The Court begins with Morse-Bills and McGregor's assertion that the DeSandres' claims against the two of them must be dismissed. The Court then turns to all four defendants' assertion that the DeSandres' conspiracy claim must be dismissed.

## A.

Morse-Bills and McGregor primarily argue that, as prosecutors, they are entitled to absolute immunity. And they believe they need no discovery to establish

that affirmative defense: according to the prosecutors, the DeSandres' own allegations show they are immune from suit.

As to McGregor, the Court agrees. "A prosecutor is entitled to absolute immunity when [she] acts as an advocate for the State and engages in activity that is intimately associated with the judicial phase of the criminal process." *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 691 (6th Cir. 2020) (internal quotation marks omitted). In their reply brief, Defendants point out that McGregor did not become the Oscoda County Prosecutor until January 2019. (ECF No. 26, PageID.112.) (This is corroborated by the Oscoda County's official website. https://perma.cc/X6RG-NW9Z.) Yet, according to the DeSandres, Cole and Grace responded to Oats' call in August 2018, a warrant issued in September 2018, and they were arrested in October 2018. (ECF No. 3, PageID.29.) So it appears that McGregor only "engage[d] in activity that is intimately associated with the judicial phase," and thus, her actions fall squarely within the scope of prosecutorial immunity. *Rieves*, 959 F.3d at 691 (providing that prosecutorial immunity extends to "administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution," including "filing an information" and "participation in a probable cause hearing"). Accordingly, the claims against McGregor will be dismissed.

But they will be dismissed without prejudice. Because Defendants waited until their reply brief to assert that McGregor did not become the Oscoda County Prosecutor until January 2019, the DeSandres had no ability to contest that assertion when responding to the motion to dismiss. And while the Court is doubtful that the

6

assertion is contestable, the DeSandres might be able to plead that McGregor somehow aided in their arrest or the filing of criminal charges before she became the Oscoda County Prosecutor in January 2019. So the Court will allow the DeSandres to file an amended complaint under the conditions detailed at the end of this opinion.

That leaves Morse-Bills.

The Supreme Court's decision in *Burns v. Reed*, 500 U.S. 478 (1991), is instructive as to whether Morse-Bills is entitled to absolute immunity. In that case, Cathy Burns reported to the police "that an unknown assailant had entered her house, knocked her unconscious, and shot and wounded her two sons while they slept." *Id.* at 481. In time, the two officers assigned the case suspected Burns shot her sons. *Id.* And because they believed that Burns might have multiple personalities, they wanted to interview her using hypnosis. *Id.* at 482. Before doing so, the two officers sought the advice of a prosecutor who told them they could proceed with the hypnosis. *Id.* While under hypnosis, Burns referred to both the assailant and herself as "Katie." *Id.* "As a result, [the officers] detained [Burns] at the police station and sought [the same prosecutor's] advice about whether there was probable cause to arrest [Burns]. After hearing about the statements that [Burns] had made while under hypnosis, [the prosecutor] told the officers that they 'probably had probable cause' to arrest [her]." *Id.* "Based on that assurance, the officers placed [Burns] under arrest." *Id.* Burns was charged; but after a judge granted her motion to suppress the statements she made under hypnosis, the charges were dropped. *Id.* at 483. When Burns later sued the prosecutor, the prosecutor asserted absolute immunity.

7

The Supreme Court held that absolute immunity did not shield the prosecutor when he gave legal advice, including advice that there was probably probable cause. *Burns*, 500 U.S. at 487, 495. The Court explained in part, "Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Id.* at 495. "Rather," said the Court, "we inquire whether the prosecutor's actions are closely associated with the judicial process." *Id.* In the end, the Court declined to extend "absolute immunity to the prosecutorial function of giving legal advice to the police." *Id.* at 496; *see also Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 692 (6th Cir. 2020) ("[T]his court held [in *Prince v. Hicks*, 198 F.3d 607, 615 (6th Cir. 1999)] that absolute immunity did not apply to a prosecutor's advice to law enforcement regarding the existence of probable cause.").

Here, the DeSandres have adequately pled that Morse-Bills advised Sheriff Grace and Deputy Cole that there was probable cause to arrest the DeSandres. The DeSandres have alleged that Grace and Cole went to their house in response to Oats' call, that they told the sheriffs that they had the right to take down the shed, and that Grace and Cole responded that they would take the matter to the prosecuting attorney to issue criminal charges. (ECF No. 3, PageID.28.) Further, according to the DeSandres, "McGregor and Morse-Bills engaged in investigating the matter and/or gave legal advice on the fact that Grace and Cole had probable cause for arrest." (ECF No. 3, PageID.29.) The DeSandres have thus pled that Morse-Bills advised Grace and

Cole that there was probable cause for arrest. And that is conduct that the Supreme Court and the Sixth Circuit has said falls outside the scope of prosecutorial immunity. *Burns*, 500 U.S. at 496; *Rieves*, 959 F.3d at 692.

Morse-Bills and McGregor resist this conclusion in several ways; none persuade.

For one, they argue that the DeSandres' complaint fails to "provide any detail whatsoever" and that their allegations "are insufficient to . . . surmount absolute immunity." (ECF No. 26, PageID.210.) Morse-Bills and McGregor argue that under *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678 (6th Cir. 2020), "more detailed and specific allegations are required to sufficiently allege claims against prosecutors." (ECF No. 26, PageID.210.) They also quote from *Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999), in support of their assertion that the DeSandres' allegations need to be more specific. (ECF No. 26, PageID.211.)

The Court agrees with Morse-Bills and McGregor to some extent: the DeSandres' complaint is vague, and the prosecutors' actions are described at a high level of generality. But the Court is required to construe the complaint in the light most favorable to the DeSandres. *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). And read in that light, the DeSandres have implied that Grace and Cole sought out advice from the prosecutor on whether they could arrest the DeSandres. And in response to the sheriffs' inquiry, Morse-Bills either conducted an investigation or told Grace and Cole that there was probable

cause for arrest (or both). The Court believes this is sufficient—barely—to avoid an application of absolute immunity at the pleading stage.

As for *Rieves* and *Prince*, neither decision requires the Court to dismiss the DeSandres' claims against Morse-Bills. True, the plaintiffs in *Rieves* provided much more detail about the prosecutors' actions in their complaint than have the DeSandres, *see* 959 F.3d at 685–90, and thus, the *Rieves* complaint much more plainly showed that the prosecutors were not entitled to absolute immunity than the DeSandres'. But the Sixth Circuit did not hold that a complaint must contain the mountain of factual allegations that was before it in *Rieves* to avoid absolute immunity. As for *Prince*, Morse-Bills and McGregor rely on the following language from that case: "It is important to note that simply alleging that a prosecutor gave legal advice is not necessarily sufficient to survive an assertion of absolute immunity. To fall outside the prosecutor's function as an advocate for the state, the legal advice must have been given as part of the investigative or administrative phase of the criminal case." *Prince*, 198 F.3d at 614. That quote is entirely consistent with what the Court has ruled here: when the complaint is read in the DeSandres' favor, they have alleged that Grace and Cole consulted Morse-Bills, prompting Morse-Bills to investigate the property-line dispute or to advise Grace and Cole on probable cause (or both), i.e., "the legal advice [was] given as part of the investigative or administrative phase of the criminal case." *Id.*

Morse-Bills and McGregor make one other argument in favor of absolute immunity. (ECF No. 22, PageID.129.) They quote *Red Zone 12 LLC v. City of*

10

*Columbus* for the proposition that prosecutorial immunity extends to "actions that are 'preliminary to the initiation of a prosecution' and 'apart from the courtroom.'" 758 F. App'x 508, 514 (6th Cir. 2019) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)).

To the extent that Morse-Bills and McGregor believe that *Red Zone* stated that absolute immunity extends to any type of investigation and legal advice "'preliminary to the initiation of a prosecution' and 'apart from the courtroom,'" they are mistaken. *Red Zone* quoted footnote 33 of *Imbler* for its rule, and the Supreme Court, quoting that same footnote, has stated, "We expressly stated [in *Imbler*] that 'the duties of the prosecutor *in his role as advocate for the State* involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' and are nonetheless entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (emphasis added) (quoting *Imbler*, 424 U.S. at 431 n.33). And prosecutors "act as investigators"—rather than advocates for the State—"when giving legal advice to the police." *Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021).

Accordingly, the Court finds that Morse-Bills is not entitled to absolute immunity at the pleading stage.

Morse-Bills and McGregor make another argument in favor of dismissal. Although they have focused on the affirmative defense of absolute immunity, they also briefly argue that given the DeSandres' vague and very general allegations, it is not plausible they violated the law. (ECF No. 22, PageID.128.) Morse-Bills and McGregor claim that the assertion that they "engaged in investigating the matter

11

and/or gave legal advice on the fact that Grace and Cole had probable cause for arrest"
is a legal conclusion and that the DeSandres have "offer[ed] no details or facts to
substantiate or otherwise plausibly explain these legal conclusions." (ECF No. 22,
PageID.128.)

Again, while the Court agrees with Morse-Bills and McGregor that the
DeSandres' allegations are very general, read in the light most favorable to the
DeSandres, it is plausible that Morse-Bills violated the Fourth Amendment. While
presumably it was Grace and Cole who primarily effectuated the DeSandres' arrest,
the DeSandres have alleged that Morse-Bills investigated the neighbors' dispute or
gave the sheriffs advice on arrest. The DeSandres have also alleged that Grace, Cole,
and Morse-Bills jointly sought an arrest warrant. (ECF No. 3, PageID.29.) In other
words, the DeSandres have pled that Morse-Bills materially assisted the sheriffs in
their arrest. And the DeSandres have also pled that "Defendants" "kn[ew] there was
no probable cause to support that Plaintiffs had committed any crime." (ECF No. 3,
PageID.30.) Further, they say that "Defendants" "proceeded with the legal process . . .
without probable cause." (ECF No. 3, PageID.31.) Thus, the DeSandres have
adequately pled that Morse-Bills violated the Fourth Amendment. *See Howse v.
Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("[C]laims for false arrest and malicious
prosecution both arise under the Fourth Amendment. . . . And they both rise and fall
on whether there was probable cause supporting the detention.").

It might be that some of the DeSandres' other claims against Morse-Bills are
not adequately pled. But Defendants have not made a claim-by-claim plausibility

12

argument. Instead, they have only argued generally that the complaint is too conclusory to state a claim. It is not this Court's job to sua sponte identify elements for each cause of action and then determine whether there are factual allegations that color in those elements.

In sum, because it appears that McGregor did not become the Oakland County Prosecutor until January 2019, she is entitled to absolute immunity, and the claims against her will be dismissed without prejudice. As set out at the end of this opinion, the DeSandres will be given a chance to rebut the inference that McGregor was only involved in the judicial phase of the proceedings. On the pleadings, Morse-Bills is not entitled to absolute immunity, and the DeSandres have at least plausibly alleged that she violated the Fourth Amendment.

## B.

All four defendants seek to dismiss Count III of the DeSandres' complaint, a civil conspiracy count. According to Defendants, the DeSandres' civil conspiracy claim is barred by the intracorporate-conspiracy doctrine. (ECF No. 22, PageID.122.)

The intracorporate-conspiracy doctrine is based on a straightforward concept: a conspiracy involves an agreement between two people, but "if all defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). When two requirements are satisfied, the intracorporate-conspiracy doctrine bars conspiracy claims brought under 42 U.S.C. § 1983. *Id.* at 818. In particular, the intracorporate-conspiracy doctrine applies if (1) the alleged conspiracy is among "two

13

or more employees of the same entity" and (2) the employees "are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Id.*

**1.**

The parties dispute whether the allegations in the complaint satisfy the "same entity" element. The complaint alleges that Cole "was a deputy employed by Oscoda county," Grace "is and/or was the sheriff of Oscoda county," that Morse-Bills "was the prosecuting attorney for County of Oscoda," and that McGregor "is . . . the prosecuting attorney for County of Oscoda." (ECF No. 3, PageID.26.) In Defendants' view, that is the end of the story: the DeSandres have alleged that they are all employed by the same entity, and so the intracorporate-conspiracy doctrine warrants dismissal of the DeSandres' conspiracy claim. (*See* ECF No. 22, PageID.131.) Not so fast, say the DeSandres; they argue that the sheriff's department and the prosecutor's office have "separate and distinct functions under Michigan law in that the Sheriff's Department serves an investigative function whereas the Prosecutor's Office issues charges and represents the State or County in court." (ECF No. 25, PageID.156–157.) Thus, the DeSandres argue that the sheriff's department and the prosecutor's office are distinct entities, and thus, the intracorporate-conspiracy doctrine does not apply. (*See id.*)

The Court found little precedent on whether two departments of one county are (or are not) considered the "same entity" for purposes of the intracorporate-

14

conspiracy doctrine. But for at least two reasons, the Court believes that in a small county like Oscoda, sheriffs and prosecutors work for the "same entity."

For one, courts have held that in Michigan, county sheriff's departments and county prosecutor's offices are not legal entities capable of being sued. *Hughson v. Cty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) ("Michigan is a jurisdiction in which the sheriff and prosecutor are constitutional officers, and there does not exist a sheriff's department or a prosecutor's office. Instead, the sheriff and the prosecutor are individuals, elected in accordance with constitutional mandates. . . . Since the sheriff's department and the prosecutor's office do not exist, they obviously cannot be sued."). That a plaintiff cannot sue the sheriff's department or the prosecutor's office suggests that the law does not recognize either one as an independent legal entity.

Second, at least two courts have suggested that employees of two departments of a local government entity are shielded from a conspiracy claim because of the intracorporate-conspiracy doctrine. In *Elersic v. Lake County*, the court explained that if the plaintiff's conspiracy claim was construed as one under federal law (as opposed to state law), it would be barred by the intracorporate-conspiracy doctrine because "the Lake County Detectives and Lake County Prosecutors are all agents of Lake County." No. 1:03-CV-1338, 2005 WL 1353864, at *4 (N.D. Ohio June 7, 2005). And in *Kelley v. D.C.*, although the plaintiff did not argue that employees of different departments could conspire, the court applied the intracorporate-conspiracy doctrine where the plaintiff had alleged that the police chief and the attorney general for the District of Columbia had conspired. *See* 893 F. Supp. 2d 115, 117, 120 (D.D.C. 2012);

15

*cf. Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at \*10 (S.D.N.Y. June 4, 2018) (finding that police officers and district attorney could *not* rely on intracorporate-conspiracy doctrine where police officers were city employees and district attorney was a state employee).

In short, the Court finds that Cole, Grace, Morse-Bills, and McGregor are all employed by the "same entity," *Jackson*, 925 F.3d at 818, for purposes of the intracorporate-conspiracy doctrine.

The DeSandres resist this result by citing two cases; but neither is on point. True, in *De Mauro v. Loren-Maltese*, the court found that the Town of Cicero and the Town of Cicero Board of Fire, Police, and Public Safety Commissioners were separate entities and thus the intracorporate-conspiracy doctrine did not bar a claim that employees of the two entities conspired. *See* No. 98 C 8318, 2000 WL 116079, at \*8 (N.D. Ill. Jan. 24, 2000). But in *De Mauro*, the Illinois General Assembly had "intended" that the Board "be an independent agency free from political and other influences," *id.*, and here, the DeSandres have not alleged that the Michigan Legislature intended that either prosecutor's or sheriff's offices "be an independent agency." The DeSandres' other case, *Novak v. City of Parma*, is also not instructive; there, the question was whether two city police officers worked for the same entity as members of the Ohio Internet Crimes Against Children Task Force. 932 F.3d 421, 436–37 (6th Cir. 2019). There is nothing that suggests that the relationship between city police officers and the Task Force in *Novak* is similar to the relationship between the sheriffs and prosecutors in this case. In any event, the Sixth Circuit merely stated

16

that "[w]ith more facts, the district court should *consider* . . . whether the Task Force is a different agency for purposes of the intracorporate-conspiracy doctrine." *Id.* at 437 (emphasis added). The Court of Appeals did not say that the two *were* different entities.

2.

The DeSandres also argue that Defendants cannot make out the other element of the intracorporate-conspiracy doctrine. As stated, for the doctrine to apply, the alleged conspirators must not only be employees of the same entity but also must have acted "within the scope of their employment when they allegedly conspired together to deprive the plaintiff[s] of [their] rights." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). The DeSandres point out that in their complaint, they alleged that Cole and Grace were acting within the scope of their employment but that Morse-Bills and McGregor "were acting outside their prosecutorial and/or quasi-judicial duties at all relevant times alleged herein." (ECF No. 3, PageID.26; ECF No. 25, PageID.156.) The DeSandres also stress that prosecutor's offices are not an investigative agency (ECF No. 25, PageID.156), and thus imply that Morse-Bills' and McGregor's investigative acts were beyond the scope of their employment.

"[C]orporate actors might be beyond the scope of their employment where the aim of the conspiracy exceeds the reach of legitimate corporate activity." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). The "scope of employment" element attempts to distinguish "between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same

17

place." *Id*; *accord Barrow v. City of Hillview, Kentucky*, 775 F. App'x 801, 807 (6th Cir. 2019); *see also Briner v. City of Ontario*, No. 1:07CV129, 2010 WL 3982755, at *15 (N.D. Ohio Oct. 7, 2010) ("Defendants act outside the scope of their employment when they pursue personal interests wholly separate and apart from the [corporate] entity.").

Here, the DeSandres' allegations indicate that Morse-Bills' and McGregor's alleged wrongful conduct was within the scope of their employment. From what the Court can glean from the complaint, Morse-Bills and McGregor allegedly did one or more of the following: investigated a property dispute between neighbors, advised that there was probable cause for the DeSandres' arrest, helped seek a warrant, charged the DeSandres, and maintained or prosecuted charges against the DeSandres. (ECF No. 3, PageID.28–29, 31, 35.) Although the DeSandres provide no specifics, it appears that each of those acts were taken because Morse-Bills and McGregor held the position of Oscoda County Prosecutor, i.e., Morse-Bills and McGregor did not take those actions as private citizens or for personal reasons. True, the DeSandres do plead that McGregor represented Oats in a civil PPO hearing (apparently before becoming the county prosecutor). (ECF No. 3, PageID.29.) But even if that suggests that McGregor had some type of personal animus against the DeSandres, the Sixth Circuit has declined to hold that actions otherwise within the scope of employment are taken outside the scope if they are also motivated by personal interests. *See Barrow v. City of Hillview, Kentucky*, 775 F. App'x 801, 808 (6th Cir. 2019); *Welch v. City of Melvindale*, No. 18-CV-11450, 2019 WL 7020744, at

*13 (E.D. Mich. Dec. 20, 2019) ("Even improper actions fall within the scope of employment where they are connected with the employer's business." (internal quotation marks omitted)). And the fact that certain of the prosecutors' actions may fall outside the realm of absolute immunity, does not mean they were also outside the scope of their employment. Accordingly, on the facts alleged, the Court infers that Morse-Bills and McGregor were not acting outside the scope of their employment.

* * *

In sum, because the DeSandres' allegations indicate that Cole, Grace, Morse-Bills, and McGregor were all employed by Oscoda County at the time of their allegedly wrongful conduct (*see* ECF No. 3, PageID.26), and because their allegations imply that each defendant acted in the scope of his or her employment when they engaged in allegedly wrongful conduct, the intracorporate-conspiracy doctrine requires dismissal of the DeSandres' conspiracy count.

## IV.

For the reasons given, Defendants' motion for judgment on the pleadings (ECF No. 22) is GRANTED IN PART and DENIED IN PART.

The DeSandres' claims against McGregor are DISMISSED WITHOUT PREJUDICE. According to Defendants (and Oscoda County's official website) McGregor was not the Oscoda County Prosecutor until after the DeSandres' arrest, and so her actions were presumably limited to the judicial phase and shielded by prosecutorial immunity. If the DeSandres can allege that McGregor somehow aided in their arrest, detention, or prosecution before she took over as the Oscoda County

19

Prosecutor in January 2019, they can file an amended complaint that repleads claims against McGregor. There must be a good-faith basis for any such amendment and the factual allegations must meet the *Iqbal* standard. If amended claims against McGregor are not filed by September 7, 2021, all claims against McGregor will be DISMISSED WITH PREJUDICE without further order from the Court.

Further, Count III of the DeSandres' complaint, civil conspiracy, is DISMISSED.

SO ORDERED.

Dated: August 27, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

20